**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ANTHONY BILAZZO,

           Plaintiff,

   v.

PORTFOLIO RECOVERY ASSOCIATES,
LLC,
           Defendant.

Civil No. 11-4517 (NLH/KMW)

**OPINION**

**APPEARANCES:**

Jennifer M. Kurtz, Esquire
The Law Office of Jennifer M. Kurtz
540 Old Bridge Turnpike
South River, New Jersey 08882
    *Attorney for Plaintiff*

Donald S. Maurice , Jr., Esquire
Rachel Francesca Marin, Esquire
Maurice & Needleman, PC
5 Walter E. Foran Boulevard
Suite 2007
Flemington, New Jersey 08822-4672

Joann Needleman, Esquire
Maurice & Needleman PC
935 One Penn Center
1617 JFK Boulevard
Philadelphia, Pennsylvania 19103
    *Attorneys for Defendant*

**HILLMAN, District Judge**

    This matter comes before the Court on Plaintiff's motion

[Doc. No. 10] for attorneys' fees and costs to Defendant's offer

of judgment seeking a total award in the amount of $4,669.00

pursuant to Section 1692k(a)(3) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3).  Defendant Portfolio Recovery Associates, LLC, opposes Plaintiff's motion and requests that the Court deny the motion in its entirety, or alternatively, reduce the total award of fees and costs to $698.00.  The Court has considered the parties' submissions, and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Plaintiff's motion is granted in part, but the total award of attorneys' fees and costs is reduced to $1,694.28.


I.   **JURISDICTION**

Plaintiff Anthony Bilazzo brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Accordingly, the Court exercises jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.


II.  **BACKGROUND**

Plaintiff filed the complaint in this action on August 8, 2011 asserting one count against Defendant alleging multiple violations of the Fair Debt Collection Practices Act ("FDCPA"). (Compl. [Doc. No. 1] ¶ 13.)  According to the complaint, Defendant "constantly and continuously placed collection calls to Plaintiff seeking and demanding payment of an alleged debt

Plaintiff does not owe." (Id. ¶ 9.) Apparently as a result of these calls, Plaintiff sent a letter to Defendant on May 3, 2011 requesting that Defendant "cease any further communications with Plaintiff regarding the alleged debt." (Id. ¶ 10; see also Cease and Desist Letter, Ex. A to Compl. [Doc. No. 1] 1.).

Plaintiff alleged that despite Defendant's receipt of the cease and desist letter on May 3, 2011, (see Compl. [Doc. No. 1] ¶ 11; see also Fax Confirmation, Ex. B. to Compl. [Doc. No. 1] 1), Defendant called Plaintiff on May 7, 2011 at 8:55 a.m. (See Compl. [Doc. No. 1] ¶ 12; see also Ex. C to Compl. [Doc. No. 1] 1.) In this action, Plaintiff originally sought statutory damages in the amount of $1,000.00, reasonable attorneys' fees, and any other relief deemed appropriated by the Court. (Id. ¶¶ 14-16.) Defendant was served with a copy of Plaintiff's complaint on August 19, 2011. (Summons [Doc. No. 3] 1.)

Approximately one month later, Defendant served Plaintiff's counsel of record, Jennifer Kurtz, Esquire, with an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.[1] (See Offer of J., Ex. A to Pl.'s Notice of Acceptance of Def.'s Offer

---

1. Federal Rule of Civil Procedure 68(a) provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." FED. R. CIV. P. 68(a).

of J. [Doc. No. 8] 1-3.)  Shortly thereafter, Defendant filed an answer to the complaint on October 5, 2011.  (<u>See generally</u> Answer [Doc. No. 5].)  Subsequently, on October 7, 2011, Plaintiff filed a Notice of Acceptance of Defendant's Offer of Judgment.  Pursuant to the Offer of Judgment, Defendant offered "to allow judgment to be taken against it in the amount of $1,001.00 ..., plus 1) ... reasonable attorneys fees and costs, through the date of this Offer of Judgment, as may be determined by the Court; 2) [the] actual costs for the filing fee of [the] complaint in the U.S. District Court; and, 3) [the] actual costs for service of the summons and complaint upon the Defendant." (Offer of J., Ex. A to Pl.'s Notice of Acceptance of Def.'s Offer of J. [Doc. No. 8] 1.)

The present motion for attorneys' fees and costs was filed on October 27, 2011 after the parties were unable to agree the amount for such an award, and seeks the Court's determination as to the proper amount of attorneys' fees and costs that should be awarded pursuant to the Act and in accordance with Defendant's Offer of Judgment.


## III. <u>DISCUSSION</u>

Under the FDCPA, a "debt collector who fails to comply with any provision" of the Act with respect to an individual plaintiff is liable for any actual damages sustained as well as statutory

4

damages as awarded by the court, not to exceed $1,000.00.  15
U.S.C. §§ 1692k(a)(1), (a)(2)(A); see also Graziano v. Harrison,
950 F.2d 107, 113 (3d Cir. 1991) (noting that two of the "three
standard components of liability for violations of the Act"
include "actual damages, [and] statutory damages as determined by
the court").  "[I]n the case of any successful action to enforce
... liability," the Act provides for an award of "the costs of
the action, together with a reasonable attorney's fee as
determined by the court."  15 U.S.C. § 1692k(a)(3); see also
Graziano, 950 F.2d at 113 (recognizing that Section 1692k(a)(3)
allows a prevailing plaintiff to recover a reasonable attorney's
fee and costs).

In the context of awarding attorneys' fees under Section
1692k(a)(3), a plaintiff may be considered a "prevailing party"
if plaintiff succeeds on any significant issue in litigation
which achieves some of the benefit plaintiff sought by bringing
the suit.  See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433
(1983); Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216, 218
(D.N.J. 1999) (citing Hensely, 461 U.S. at 433); Conklin v.
Pressler & Pressler LLP, No. 10-3566, 2012 WL 569384, at *2
(D.N.J. Feb. 21, 2012).  As the Third Circuit has recognized,
absent unusual circumstances, an award of attorney's fees to a
prevailing party in an FDCPA action "should not be construed as a
special or discretionary remedy" and is therefore required under

5

the Act.  Graziano, 950 F.2d at 113 (acknowledging that the FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.").

Section 1692k(a)(3) specifically provides that an attorney's fee under the FDCPA must be reasonable.  15 U.S.C. § 1692k(a)(3). According to the Third Circuit, generally, "a reasonable fee is one which is adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys." Pub. Interest Research Group of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995) (internal quotations and citation omitted).  In order to determine what constitutes a reasonable attorney's fee under the FDCPA, the Court must employ the well recognized "lodestar" method applicable under other fee-shifting statutes which entails multiplying the total number of hours reasonably expended by a reasonable hourly rate.  See Graziano, 950 F.2d at 114 (concluding that a reasonable fee under the FDCPA is determined in accordance with Supreme Court precedent directing that the number of hours reasonably expended should be multiplied by a reasonable hourly rate) (citing Hensley, 461 U.S. at 433); see also Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (recognizing in the context of Section 1983 that the reasonableness of an attorney's fee is calculated under the lodestar formula); Norton, 36 F. Supp. 2d at 218-19 (applying the

lodestar method to calculate reasonable attorney's fee award under Section 1692k(a)(3) of the FDCPA.

It is the "party seeking attorney fees [that] bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citation omitted).  In order to meet this burden, the party seeking fees is initially required to submit evidence supporting the hours worked and the rates claimed.  Id.  To the extent the opposing party seeks to challenge the fees sought, "the opposing party must ... object 'with sufficient specificity' to the request."  Id.  Where the opposing party raises objections, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."  Id.

Additionally, although the lodestar is presumed to yield a reasonable fee, district courts retain discretion to adjust the lodestar. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  Adjustments to the lodestar may be made based on a variety of factors, including but not limited to: the time and labor required; the novelty and difficulty of the legal issue; the skill required to perform the legal service properly; the customary fee in the community for similar work; the amount involved and results obtained; the experience, reputation and ability of the attorneys; the nature and length of the

attorney-client relationship; and fee awards in similar cases. Pub. Interest Research Group, 51 F.3d at 1185 n.8 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).

## IV.  **ANALYSIS**

Initially, the Court notes Defendant does not dispute that the FDCPA provides for an award of reasonable attorneys' fees, nor does Defendant dispute that Plaintiff is considered the prevailing party in this matter in light of his recovery of a judgment for $1,001.00.  (See Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Att'y's Fees and Costs [Doc. No. 15] (hereinafter, "Def.'s Opp'n"), 5.)  Accordingly, the Court now turns to the only issue the parties dispute — the reasonableness of the fees requested.

### A.  **Breakdown of Fee Award Sought by Plaintiff**

Plaintiff seeks an award of attorneys' fees totaling $4,259.00.  (Pl.'s Mot. for Att'y's Fees and Costs to Def.'s Offer of J. (hereinafter, "Pl.'s Mot.") [Doc. No. 10] 9.)  The award requested by Plaintiff seeks fees for three attorneys and one paralegal for their respective time spent on this matter billing at the following rates:

> (1)  Jennifer Kurtz, Esq. for 2.5 hours at
>       $350.00 per hour — totaling $875.00;
> (2)  John Barker, Esq., for 5.7 hours at $350.00
>       per hour — totaling $1,995.00;
> (3)  Mahadhi Corzano, Esq., for 5.9 hours at

8

$210.00 per hour — totaling $1,239.00; and
(4) Moira Roth, Legal Assistant, for 1.2 hours
at $125.00 per hour — totaling $150.00.

(Id.) Plaintiff also seeks to recover $410.00 in litigation
costs which includes the $350.00 filing fee for the complaint,
and $60.00 cost for service of Plaintiff's complaint. (Id. at
14; see also Absolute Process and Litigation Invoice, Ex. I [Doc.
No. 10-9] 1.) Defendant does not dispute Plaintiff's ability to
recover $410.00 in litigation costs pursuant to the terms of the
Offer of Judgment. Therefore, $410.00 will be added to lodestar
calculation set forth infra.

**B. Compensable Period**

As a threshold matter to the awarding of attorneys' fees in
this case, Defendant objects to the inclusion in such an award of
any fees incurred after the date of the Offer of Judgment ("the
Offer") – that being September 23, 2011. (Def.'s Opp'n. 11.)
Defendant contends that the Offer "was clear on its face:
acceptance of the offer of judgment would entitle the Plaintiff
to the judgment amount plus reasonable attorneys' fees incurred
through the **date of the offer.**" (Id.) (citing Offer of J., Ex. A
to Pl.'s Notice of Acceptance of Def.'s Offer of J. [Doc. No. 8]
1) (emphasis in original). Thus, Defendant argues that the Offer
was a contract which Plaintiff accepted, Plaintiff is bound by
the accrual date therein, and under the Offer's express terms,
Plaintiff cannot recover $1,596.00 worth of fees for 5.6 hours of

9

work billed by attorneys Kurtz, Barker, and Corzano after the date of the September 23, 2011 Offer.[2]   (Def.'s Opp'n 11.)

Federal Rule of Civil Procedure 68(a) permits a party to "offer to allow judgment [against it] on specified terms, with the costs then accrued."  FED. R. CIV. P. 68(a).  Thus, an offer of judgment pursuant to Rule 68 constitutes a contract which "should be interpreted like any other contract."  Kyreakakis v. Paternoster, 732 F. Supp. 1287, 1290 n.3 (D.N.J. 1990); see also Weed-Schertzer v. Nudelman, Klemm & Golub, No. 10-6402, 2011 WL 4436553, at *5 (D.N.J. Sept. 23, 2011).  In drafting the terms of a Rule 68 offer of judgment "a party may specify within the offer of judgment a cut-off date for the accrual of fees and costs." Alexander v. NCO Fin. Sys., Inc., No. 11-401, 2011 WL 2415156, at *3 (E.D. Pa. June 16, 2011); see also Weed-Schertzer, 2011 WL 4436553, at *5 (recognizing that "'an [o]ffer of judgment is a contract, and if a party has agreed to the accrual date therein, that date will control.'") (citation omitted).

Interpreting similar, and in some cases identical, language in a Rule 68 offer of judgment to that presented here, courts within this Circuit have routinely found that such language constitutes "an enforceable temporal limitation on Plaintiff's

---

2.  If the Court accepts Defendant's argument, Plaintiff would necessarily be precluded from recovering the fees incurred in preparing the present motion because Plaintiff's attorneys expended this time on October 24, 2011, approximately one month after the date of the Offer.

potential attorney's fees" which warrants the exclusion of fees
accrued after the date the offer was served.  See Weed-Schertzer,
2011 WL 4436553, at *5-6 (interpreting identical language in Rule
68 offer and excluding 8.3 hours of time where offer "plainly
state[d] that reasonable attorney's fees may be recovered through
'*the date of the Offer*'") (emphasis in original); see also
Zavodnick v. Gordon & Weisberg, P.C., No. 10-7125, 2012 WL
2036493, at *2-3 (E.D. Pa. June 6, 2012) (holding that offer of
judgment, which specifically included "'reasonable attorneys fees
and costs, through the date of this Offer of Judgment, as may be
determined by the Court'", "unambiguously excluded" fees incurred
after the offer was served); Brass v. NCO Fin. Sys., Inc., No.
11-cv-1611, 2011 WL 3862145, at *3-4 (E.D. Pa. July 22, 2011)
(excluding 7.1 hours accrued after the date offer of judgment was
served where offer explicitly stated that "'the Judgment entered
shall include an amount for Plaintiff's reasonable costs and
attorney's fees accrued through the date of this Offer of
Judgment.'"); Alexander, 2011 WL 2415156, at *3-4 (finding that
terms of a Rule 68 offer precluded recovery of 5.4 hours billed
after the date of the offer which provided for attorney's fees
"'accrued through the date of this Offer of Judgment.'")

        In this instance, the relevant language of Defendant's Offer
explicitly provides as follows: "Defendant, Portfolio Recovery
Associates, LLC, pursuant to Federal Rule[] of Civil Procedure

68, hereby offers to allow judgment to be taken against it in the amount of $1,001.00 ..., plus 1) your reasonable attorneys fees and costs, *through the date of this Offer of Judgment*, as may be determined by the Court[.]"  (Offer of J., Ex. A to Pl.'s Notice of Acceptance of Def.'s Offer of J. [Doc. No. 8] 1) (emphasis added).  Plaintiff does not appear to challenge that Defendant served the Offer on September 23, 2011.  Furthermore, Plaintiff does not dispute that the Offer contains the specific phrase "through the date of this Offer of Judgment", nor does Plaintiff argue that the language of the Offer is ambiguous in any respect.

Rather, Plaintiff's sole argument in response is that the time incurred in preparing the present motion for fees should not be reduced.[3]  (Pl.'s Reply Br. [Doc. No. 18] 7.)  Plaintiff relies on case law from multiple district courts and several Courts of Appeals, including the Third Circuit, to argue that "[i]t is generally accepted ... that time spent preparing the fee petition is compensable."  (Id. at 6-7.)  Thus, Plaintiff argues that the time incurred after September 23, 2011 to prepare this motion should not be reduced.

The Court disagrees with Plaintiff in this particular

---

3.  It is unclear whether, by asserting this argument, Plaintiff concedes that time incurred after the date of the Offer other than that expended to prepare the present motion is properly excluded.  The Court need not address this issue based on its finding infra that all time beyond the date of the Offer is properly excluded.

circumstance because the language of the Offer expressly stated that it included "reasonable attorneys fees and costs, *through the date of this Offer of Judgment*[.]" (Offer of J., Ex. A to Pl.'s Notice of Acceptance of Def.'s Offer of J. [Doc. No. 8] 1) (emphasis added).  The Court finds that the terms of Defendant's Offer were clear and constitute a reasonable temporal limitation on Plaintiff's recoverable attorneys' fees.  See Weed-Schertzer, 2011 WL 4436553, at *6.  If Plaintiff wanted to ensure recovery of attorneys' fees incurred after the date of the Offer, including those related to preparation of this motion, Plaintiff was free to reject the Offer outright or negotiate for different terms.  Plaintiff did not do so, and in accepting the Offer, Plaintiff agreed to limit the recoverable fees to those incurred only through September 23, 2011.  Plaintiff is thus bound to that accrual date.

Therefore, consistent with the terms of the Offer, the Court will exclude 5.6 hours of time billed after September 23, 2011. See, e.g., Weed-Schertzer, 2011 WL 4436553, at *5-6; Zavodnick, 2012 WL 2036493, at *2-3; Brass, 2011 WL 3862145, at *3-4; Alexander, 2011 WL 2415156, at *3-4. After the exclusion of 5.6 hours of time accrued beyond the date of the Offer, the remaining 8.5 attorney hours to be considered on this motion are as follows: (1) Jennifer Kurtz, Esq. — 1.6 hours; (2) John Barker, Esq. — 3.6 hours; and (3) Mahadhi Corzano, Esq. — 3.3 hours.

**C.     Compensation to Non-New Jersey "Consulting" Attorneys**

Defendant also objects to the award of any attorneys' fees for services rendered by John Barker, Esq. and Mahadhi Corzano, Esq.[4] on the basis that the services provided by these attorneys, who are not admitted to practice in the state of New Jersey or before the bar of this Court, are not recoverable.[5]  (Def.'s Opp'n 13.)  The Court notes that the time incurred by Mr. Barker and Mr. Corzano constitutes 6.9 hours of the remaining 8.5 attorney hours under consideration here.  According to the Court's calculations then, over eighty-one percent (81%) of the total attorney time billed in this case before the date of the Offer of Judgment was performed by these two attorneys, and if the Court accepts Defendant's argument, cannot be recovered.

Plaintiff indicates that Mr. Barker and Mr. Corzano "incurred time in this matter as consulting attorneys[] only." (Pl.'s Mem. 9 n.4.)  Plaintiff concedes the fact that Mr. Barker and Mr. Corzano are not admitted to practice in the state of New Jersey or before the bar of this Court.  (See Pl.'s Reply 2-3). However, according to Plaintiff, "a reasonable attorney fee

_____

4.  Both Mr. Barker and Mr. Corzano are attorneys with the law firm of Krohn and Moss, Ltd.  (Pl.'s Mem. 9.)

5.  The parties do not dispute that Jennifer Kurtz, Esq. is a licensed attorney admitted to practice in the state of New Jersey and before this Court.  (See Def.'s Opp'n 15; Pl.'s Reply Br. 4.) Thus, Defendant does not challenge the awarding of fees incurred by Ms. Kurtz on this basis.

includes time spent by individuals that are not members of the bar, but whose work product contributes to the results obtained in this case." (Pl.'s Mem. 9 n.4) (citing <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989)).

In this regard, Defendant argues that fees for work by Mr. Barker and Mr. Corzano should be denied because neither of these attorneys registered with the New Jersey Lawyers' Fund for Client Protection pursuant New Jersey Rule of Professional Conduct 5.5(c)(6). (Def.'s Opp'n 14.) Defendant also contends that the majority of this time includes work which should have been, but was not, adequately supervised by Ms. Kurtz. (<u>Id.</u> at 15.) Specifically, Defendant points to the fact that although Plaintiff is a citizen of New Jersey, Ms. Kurtz never spoke to Plaintiff and never sent Plaintiff any correspondence regarding his complaint or the status of this litigation. (<u>Id.</u>) Defendant also asserts that Ms. Kurtz was not involved in any of the initial work in this cause because it was Mr. Barker who handled Plaintiff's initial inquiry, handled the initial client consult with Plaintiff, and conducted Plaintiff's client interview. (<u>Id.</u> 15-17.) Thereafter, Defendant notes that it was Mr. Corzano, who, without any supervision from Ms. Kurtz, drafted the complaint, sent correspondence to Plaintiff, and sent a demand to Defendant on Plaintiff's behalf. (<u>Id.</u> at 16-17.)

Defendant also raises several issues with respect to Krohn

15

and Moss, Ltd.'s ("Krohn and Moss") practices in retaining
clients and engaging local counsel.  Defendant points out that
Krohn and Moss's website "invites individuals, like Plaintiff, to
either call their 1-800 number or submit a 'free case review.'"
(Id. at 18; see also Screen shot of Krohn and Moss website, Ex.
B. to Certification of Donald S. Maurice [Doc. No. 15-5] 1.)
Defendant also alleges that Krohn and Moss "advertises for 'local
counsel' and suggests that local counsel will have little or no
involvement in the litigation."  (Def.'s Opp'n 18; see also
Craig's List Advertisement, Ex. C. to Certification of Donald S.
Maurice [Doc. No. 15-6] 1.)

     The Craig's List advertisement submitted by Defendant
indicates that Krohn and Moss is seeking "local counsel" for
federal court filings in Iowa and asserts that Krohn and Moss
would "would pay a 'flat' $150 per case just for the right to
designate the attorney as ... local counsel ([with] no work
required other than signing off on the complaint)[.]" (See
Craig's List Advertisement, Ex. C. to Certification of Donald S.
Maurice [Doc. No. 15-6] 1.)  The advertisement further sets forth
that Krohn and Moss "would cover any trials or heavy litigation
and will handle all paperwork."  (Id.)  Based on all of the
above, Defendant argues that the majority of legal services
provided here were performed by individuals not authorized to
practice law in New Jersey and without attorney supervision thus

16

warranting denial of these fees.  (Def.'s Opp'n 19.)

The issue the Court must resolve in this circumstance is whether the work conducted by Mr. Barker and Mr. Corzano was done merely in their purported role as "consulting attorneys" or whether their work was of such a significant nature that it can fairly be said that these attorneys "appeared" and "participated" in this case on Plaintiff's behalf.  The precise nature of the relationship between Ms. Kurtz and the attorneys from Krohn and Moss, Mr. Barker and Mr. Corzano, is unclear to the Court.[6]  What is clear, however, is that neither Mr. Barker, nor Mr. Corzano are licensed to practice by the Supreme Court of New Jersey. (Pl.'s Reply Br. 2-5).  Accordingly, these attorneys cannot be considered for plenary admission to the bar of the District Court of New Jersey pursuant to Local Civil Rule 101.1(b).

As the comments to Local Rule 101.1 make clear, "[m]embership in New Jersey's federal bar is restricted to attorneys licensed by the Supreme Court of New Jersey, ..., and patent attorneys, ....  All other counsel wishing to *appear* before the Court **must** be admitted *pro hac vice* under L.Civ.R. 101.1(c) in civil cases[.]"  Cmt. 3 to L. CIV. R. 101.1.  In this

---

6.  To the extent Defendant contends that Ms. Kurtz and the attorneys at Krohn and Moss have an undisclosed fee-sharing arrangement that violates the New Jersey Rules of Professional Conduct, the record before the Court at this time is insufficient to make this determination and will therefore not be addressed herein.

District, where an attorney cannot seek plenary admission, the attorney must seek leave to appear *pro hac vice* pursuant to Local Civil Rule 101.1(c) which provides that "[a]ny member in good standing of the bar of any court of the United States or of the highest court of any state, who is not under suspension or disbarment by any court and is ineligible for admission to the bar of this Court under L.Civ.R. 101.1(b), may in the discretion of the Court, on motion, be permitted *to appear and participate* in a particular case."  L. CIV. R. 101.1(c)(1) (emphasis added). Thus, if Mr. Barker and Mr. Corzano's work can fairly be considered as "appearing and participating" in this case, then Mr. Barker and Mr. Corzano were required to seek admission *pro hac vice* pursuant to the Local Rules.

   In determining whether these attorneys functioned in a "consulting" role or in a more qualitatively significant manner in this case, the Court is guided first by the New Jersey Supreme Court's decision in <u>In re Jackman</u>, 761 A.2d 1103 (2000).  There, the New Jersey Supreme Court considered whether Steven Jackman, an attorney originally licensed to practice in Massachusetts, engaged in the unauthorized practice of law in New Jersey while he was employed as an associate in a large law firm but was not licensed to practice in New Jersey.  Initially, the Supreme Court recognized that protection of the public and assurance of the proper, orderly, and efficient administration of justice in New

Jersey constitute fundamental interests that are "implicated whether an attorney counsels a client through a transaction culminating in the client's execution of legally binding documents, or counsels and represents a client during a litigated matter." In re Jackman, 761 A.2d at 1105.

In reviewing Mr. Jackman's conduct, the Supreme Court noted that although Mr. Jackman "consulted with other [New Jersey licensed] lawyers on New Jersey law matters, ... [Mr. Jackman] otherwise operated as if he were a fully authorized associate at the firm." Id. Based on the nature of the work Mr. Jackman performed, the Supreme Court concluded that his conduct represented "the unabashed practice of law in New Jersey by one who lacked a New Jersey license to practice." Id. at 1106. Importantly, the fact that Mr. Jackman "may not have appeared in court, but [only] worked on transactional matters," did not govern the Supreme Court's conclusion that Mr. Jackman was practicing law in New Jersey. Id. According to the Supreme Court "[o]ne is engaged in the practice of law whenever legal knowledge, training, skill and ability are required." Id. In arriving at the conclusion that Mr. Jackman was practicing law without a license, the Supreme Court found that Mr. Jackman "had taken on all the duties of a lawyer rending legal services to clients [because he] ... interviewed and counseled clients, prepared and signed documents to or on behalf of clients, and

19

negotiated with lawyers on the merger and acquisition matters he handled." Id. at 1107.

Although In re Jackman is particularly instructive, Plaintiff, relying on Winterrowd v. American General Annuity Ins. Co., 556 F.3d 815 (9th Cir. 2009), argues that "fees for out-of-state attorneys providing assistance to lead counsel are recoverable because such conduct does not rise to the level of 'appearing' before the district court."  (Pl.'s Reply Br. 3.) While the Court finds Plaintiff's reliance on Winterrowd misplaced here, Winterrowd does provide significant guidance on this issue of a consulting attorney generally.  In finding that plaintiffs could recover attorney's fees for the work of an out-of-state attorney in Winterrowd, the Ninth Circuit concluded that the out-of-state attorney acted in a "litigation support" or consultant capacity where he "did not physically appear before the Central District, did not sign pleadings in the case before the Central District, had minimal, nonexclusive contacts with the ... plaintiffs, that [lead counsel], who was licensed to practice law in California, was the person who alone remained responsible to the plaintiffs, and that [the out-of-state attorney] did not render legal services directly to the plaintiffs[.]"  556 F.3d at 824-25.

The Court also finds instructive another FDCPA case involving different attorneys from the same law firm involved in

the present case, Krohn and Moss, where the District Court for
the Central District of California faced a similar issue on a
motion for attorneys' fees.  Krapf v. Nationwide Credit Inc., No.
09-00711, 2010 WL 4261444, at *1, 3 (C.D. Cal. Oct. 21, 2010).
In Krapf, the defendant objected to fees sought for non-
California counsel arguing that the plaintiff could not recover
fees for the work of unlicensed attorneys.  Id. at *2.  The court
rejected this argument and permitted plaintiff to recover
attorney's fees for work performed by the out-of-state attorney
because that attorney: (1) "recorded a modest number of hours" as
compared to associates from Krohn and Moss; (2) acted as a
consultant by only  "reviewing motions, preparing memos, and
discussing trial strategy"; (3) did not sign or draft any
pleadings in the case; and (4) did not have any contact with the
plaintiff or opposing counsel.  Id. at *3.  Thus, the out-of-
state attorney "acted in such a manner that his contribution was
distinguishable from an 'appearance.'"  Id.

    With this guidance in mind, the Court finds while the
particular circumstances may vary from case to case, generally,
an out-of-state attorney functions as a "consulting" attorney
where that attorney:

     (1)   refrains from direct contact with the client
           through either client consults, interviews,
           telephone calls, in-person meetings, or
           correspondence, etc.;
     (2)   refrains from any significant contact with
           opposing counsel, including but not limited to,

presenting a settlement demand/offer on behalf of the client or granting extensions of time to file court documents;

(3)   does not sign pleadings or motions filed with the court, and does not draft a substantial portion of the pleadings- specifically the complaint;

(4)   engages almost exclusively in activities such as reviewing motions, preparing memos, editing documents, discussing litigation strategy with lead counsel, conducting legal research, and the like; and

(5)   records only a modest number of hours during the course of litigation as compared to that of lead counsel and other attorneys admitted to practice in the relevant jurisdiction.

In the Court's view, serving as a "consulting" attorney is qualitatively different than "appearing and participating" in a given case, and the issue of whether the attorney ever physically appears before the court is not particularly instructive to evaluating an out-of-state attorney's role in a case.  The determination turns instead on the nature of the work and whether the out-of-state attorney can fairly be said to have "taken on all the duties of a lawyer rendering legal services to clients" such as "interview[ing] and counsel[ing] clients, prepar[ing] and sign[ing] documents to or on behalf of clients, and negotiat[ing] with lawyers" representing the client's adversary.  Cf. In re Jackman, 761 A.2d at 1106-07.

Here, Plaintiff essentially contends that Mr. Barker's and Mr. Corzano's hours, which were incurred to "provide assistance" to lead counsel, Ms. Kurtz, are compensable under Winterrowd. However, Plaintiff's reliance on Winterrowd is unwarranted and

his argument is flawed because it presupposes, without offering any support, that the nature of the work performed by Mr. Barker and Mr. Corzano constituted mere "assistance" to Ms. Kurtz and did not rise to level of "appearing" before this Court.  In this case, the nature of the work performed by Mr. Barker and Mr. Corzano is fundamentally, qualitatively different than that of the out-of-state attorneys involved in <u>Winterrowd</u> or <u>Krapf</u>.

While Plaintiff indicates that Mr. Barker and Mr. Corzano are merely "consulting" attorneys and that Ms. Kurtz was "lead counsel" in this case, the Court finds that characterization of their respective roles to be quite problematic.  Initially, as noted <u>supra</u>, over eighty-one percent (81%) of the remaining 8.5 hours of potentially compensable attorney time was incurred by the so-called "consulting" attorneys Mr. Barker and Mr. Corzano — a total of 6.9 hours.  Thus, Ms. Kurtz's efforts in this case account for a mere nineteen-percent (19%) of the total attorney fees sought by Plaintiff.  The numbers do not lie, and these percentages alone strongly suggest to the Court that Ms. Kurtz's role was secondary to that of Mr. Barker and Mr. Corzano.  Although Ms. Kurtz is listed as counsel of record in this case, the delegation of work between these attorneys demonstrates that Mr. Barker and Mr. Corzano were in fact lead counsel and fulfilled far more than a mere "consulting attorney" role in this litigation.

23

Furthermore, the pleadings and motions filed by Plaintiff lead the Court to the same conclusion that Ms. Kurtz served in only a minimal capacity in this case.  While Ms. Kurtz may have signed all the pleadings and motions filed on behalf of Plaintiff, those documents repeatedly indicate that Krohn and Moss, and not Ms. Kurtz or her law firm, represented Plaintiff in this case.  For example, the first line of the complaint sets forth that "Plaintiff, Anthony Bilazzo (Plaintiff), through his attorneys, **Krohn & Moss, LTD.**, alleges the following against Defendant[.]"  (Compl. [Doc. No. 1] 1) (emphasis added).  Additionally, Krohn and Moss is identified as "Of Counsel" in Plaintiff's complaint.  (<u>Id.</u> at 4.)  Similarly the present motion for attorneys' fees reiterates that "Plaintiff, by and through **his attorneys Krohn & Moss, Ltd.** ("K&M"), brought suit pursuant to provisions of the Fair Debt Collection Practices Act[.]"  (Pl.'s Mem. 1.)  The motion concludes by explicitly stating that "Plaintiff was represented by Krohn & Moss, Ltd, a consumer protection law firm that has represented thousands of consumers to date and relies solely on the fee-shifting provision of the FDCPA to be paid."  (<u>Id.</u> at 15.)  These repeated representations that Krohn and Moss represents Plaintiff are another clear indication to the Court that Mr. Barker and Mr. Corzano were in fact lead counsel in this case and not merely "consulting" with Ms. Kurtz.

24

Moreover, the billing records submitted by Plaintiff resolve any lingering uncertainty regarding which attorneys served as lead counsel in this case.  These records demonstrate that the nature of the work performed by Mr. Barker and Mr. Corzano went far beyond "consulting", and the Court finds that these attorneys actively "appeared and participated" in this case.  For example, with respect to Mr. Barker, the billing records presented to the Court specify that the 3.6 hours billed by Mr. Barker included the following work completed between May 11, 2011 and May 13, 2011:

> (1)  receiving the initial client inquiry from Plaintiff;
> (2)  setting up a client consultation with Plaintiff;
> (3)  researching the "viability" of Defendant;[7]
> (4)  drafting a factual summary of the case with instructions on how to proceed with the litigation;
> (5)  conducting a client interview of Plaintiff;[8]

---

7.  Presumably this research was done for the purpose of determining whether or not Defendant was "judgment proof" and to permit Mr. Barker to assess whether bringing a suit against Defendant could potentially result in either a settlement or the recovery of money damages.

8.  The billing records reflect that this interview conducted by Mr. Barker was the **only** interview with Plaintiff during the entirety of this case by **any** of the three attorneys involved, and also indicate that Plaintiff had **no further** telephone or in-person communications with any of these attorneys from May 13, 2011 to the Offer of Judgment Date – September 23, 2011. (Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3] 3-5.)  The Court declines to comment on the sufficiency of counsel's efforts to keep Plaintiff apprised of the status of his case, and simply observes these facts for purposes of assessing whether Mr. Barker and Mr. Corzano were merely "consulting"

> (6)   preparing a memo regarding which counts to
>        allege in the complaint; and
> (7)   researching applicable state and federal
>        statutes to determine venue, and any additional
>        state or federal claims to assert.

(Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3]

5.)  These entries further reflect that **all** of the work performed

by Mr. Barker was done independently of Ms. Kurtz, and that she

did not supervise, review, or otherwise assist Mr. Barker in any

meaningful, substantive manner in this case.

With respect to Mr. Corzano, the billing records presented

to the Court demonstrate that the 3.3 hours billed by Mr. Corzano

included the following work completed between June 16, 2011 and

September 13, 2011:

> (1)   composing the initial draft of the complaint;
> (2)   reviewing information provided by Plaintiff for
>        the purpose of drafting the complaint;
> (3)   researching the FDCPA to determine applicable
>        violations for inclusion in the complaint;
> (4)   drafting the introduction, jurisdiction, venue,
>        and identity of the party sections of the
>        complaint;
> (5)   drafting the statement of facts and the FDCPA
>        count of the complaint;
> (6)   preparing the verification signed by Plaintiff
>        and attached to the complaint;
> (7)   editing the complaint and sending it to Ms. Kurtz
>        for review and approval;
> (8)   revising the complaint per Ms. Kurtz's
>        instructions;
> (9)   sending correspondence directly to Plaintiff;
> (10)  preparing and sending a pre-suit settlement
>        demand to Defendant, and following up with
>        Defendant several weeks later in an "attempt to
>        resolve [the] case prior to commencing

---

attorneys in this matter.

           litigation";
   (11)  preparing and sending correspondence to
          Defendant's counsel agreeing to "an extension to
          Answer with demand to settle [the] case";
   (12)  reviewing the case to verify and assess
          Defendant's allegations regarding the bona fide
          error defense.

(Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3] 3-5.)  The billing records further establish that Mr. Corzano acted independently of Ms. Kurtz with respect to several significant tasks set forth above, including drafting the entirety of the complaint, determining relevant FDCPA violations for inclusion in the complaint, preparing Plaintiff's verification, sending correspondence directly to Plaintiff, and preparing and sending a pre-suit demand to Defendant to resolve the case prior to the complaint being filed.

    Between Mr. Barker and Mr. Corzano, these two attorneys had substantial and direct contact with the client through client consults, interviews, and correspondence.  Mr. Corzano also engaged in significant contact with opposing counsel and Defendant by presenting Defendant with a pre-suit demand to resolve the case on Plaintiff's behalf, following-up on the status of that demand, and granting an extension of time to file an answer.  Although neither Mr. Barker nor Mr. Corzano actually signed the pleadings or motions filed with the Court, Mr. Corzano drafted the entire complaint independently of Ms. Kurtz and based largely on information Mr. Barker, not Ms. Kurtz, actually

27

obtained from Plaintiff.  Additionally, while Ms. Kurtz's name follows the "/s/" on these documents, the documents repeatedly confirm that Plaintiff was represented by Krohn and Moss - i.e., through Mr. Barker and Mr. Corzano.

Taking these circumstances under consideration, the Court finds that the nature of the work performed by Mr. Barker and Mr. Corzano went far beyond simply reviewing motions, preparing memos, editing documents, and conducting legal research.  These attorneys clearly took on the duties of lawyers rendering legal services to Plaintiff by interviewing and counseling Plaintiff, drafting the complaint, and negotiating on behalf of Plaintiff to settle the case.  The reality that these attorneys served as lead counsel and actively participated in litigating this case is confirmed by the fact they billed over four times as many hours in this case than Ms. Kurtz.[9]  In these circumstances, the Court

_____

9.  In light of the facts and circumstances outlined herein, the Court is deeply concerned by the Craig's List advertisement Defendant submitted in connection with the present motion.  This internet based advertisement - or classified ad - demonstrates that Krohn and Moss, at least in other cases, might be seeking local counsel to appear on behalf of plaintiffs in other district courts, with the apparent intention that Krohn and Moss will handle 80-90% of the actual litigation in the case and will simply pay local counsel to "sign-off" on court filings while Krohn and Moss covers the "heavy litigation" and handled "all paperwork".  The role of local counsel, at least in this District, requires more.

Although it appears that Ms. Kurtz's overall involvement in this case is generally consistent with that advertised and marketed for by Krohn and Moss on at least one previous occasion, there is no direct evidence before the Court to demonstrate that Krohn and Moss recruited the services of Ms. Kurtz in this

finds that Mr. Barker and Mr. Corzano "appeared and participated" in this litigation within the meaning of Local Civil Rule 101.1(c) and thus were required to obtain admission *pro hac vice*. However, the record clearly reflects neither of these attorneys ever sought, nor were granted, leave to appear *pro hac vice* at any time during the pendency of this case.

At least one other federal court has encountered similar "confusion regarding the status of plaintiff's counsel" in a FDCPA case where Krohn and Moss, through Mr. Barker, was involved in the representation of plaintiff. <u>Carman v. CBE Group, Inc.</u>, 782 F. Supp. 2d 1223, 1235 n.58 (D. Kan. 2011). The district court in <u>Carman</u> noted that Krohn and Moss, and specifically Mr. Barker, were "apparently lead counsel for plaintiff" but "had not taken steps to be admitted <u>pro hac vice</u>" pursuant to the district court's local rules. <u>Id.</u> The district court further commented that while attorney, Raymond Probst, Jr. of The Probst Law Firm in Kansas City, Kansas entered his appearance in the case as local counsel, Mr. Probst signed his pleadings as both a member of The Probst Law Firm and as a member of Krohn and Moss, thereby adding to the uncertainty of plaintiff's representation. <u>Id.</u> The district court addressed this matter by communicating with

_____

particular case by way of a similar Craig's List advertisement or other classified posting. The Court merely notes that such a general practice is questionable under the Local Rules in this District.

29

Mr. Barker directly wherein the court learned that the "failure to seek pro hac vice status was [apparently] inadvertent[.]" <u>Id.</u>

At this time, it is also worth noting that Krohn and Moss is a consumer protection law firm that purportedly "relies solely on the fee-shifting provision of the FDCPA to be paid." (Pl.'s Mem. 15.)  Accepting this representation as true, one could reasonably expect that attorneys relying so heavily on this fee-shifting provision for compensation would carefully review and familiarize themselves with the local civil rules for attorney admission in any district court where those attorneys are not admitted to practice but seek to initiate litigation so as to ensure their compliance with the local rules and any other ethical guidelines governing the practice of law in that district.  In this case, as in <u>Carman v. CBE Group, Inc.</u>, 782 F. Supp. 2d 1223, 1235 n.58 (D. Kan. 2011), it appears that the attorneys from Krohn and Moss, particularly Mr. Barker for a second time, failed to engage in such a reasonable course of professional conduct.  On the record presented here, the Court will assume that this failure was inadvertent and resulted from counsel's oversight.  There is not sufficient evidence presented here to warrant a finding by this Court that counsel purposefully violated the Local Civil Rules of this District by not seeking admission *pro hac vice*.

However, this failure, even if inadvertent, cannot be condoned by the Court.  "[I]t is well established that 'a federal

court has the power to control admission to its bar and to discipline attorneys who appear before it.'" Surrick v. Killion, 449 F.3d 520, 531 (3d Cir. 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Moreover, the Court is "afforded a 'great deal of discretion' to adjust the awarded [attorneys'] fee in light of the opponent's objections" and finds that such discretion must be utilized here based on the significant objections raised by Defendant. See Levy v. Global Credit and Collection Corp., No. 10-4229, 2011 WL 5117855, at *2 (D.N.J. Oct. 27, 2011) (citing Hensley, 461 U.S. at 433).

The failure of Mr. Barker and Mr. Corzano to properly seek admission *pro hac vice* in this case is troublesome to the Court because it essentially disregards the Court's well established power to control admission to its own bar. Therefore, the Court cannot, in good conscience, permit Plaintiff to recover the entirety of the fees sought for Mr. Barker and Mr. Corzano. However, the Court disagrees with Defendant that no fees should be awarded for this work based on the mandatory nature of a fee award under Section 1692k(a)(3) of the FDCPA. Accordingly, having reconciled these issues, the Court will impose a flat fifteen percent (15%) reduction of the total fee award with respect to these two attorneys after the lodestar calculation is

31

complete.[10]   Additionally, the Court will then subtract another $150.00 from each attorney's fee award — the payment each attorney would have been required to pay pursuant to Local Civil Rule 101.1(c)(3) had they properly sought and been granted *pro hac vice* admission.[11]   The Court finds this approach reasonable and equitable particularly where case law offers support for the complete denial of attorneys' fees where attorneys are not admitted *pro hac vice*.  See, e.g., <u>Idaho Sporting Congress, Inc. v. Alexander</u>, 23 F. App'x 713, 714 (9th Cir. 2001) ("Failure of ... counsel to properly and timely secure *pro hac vice* admission before the district court was a sufficient reason to deny [their] application for attorneys' fees[.]"); <u>Martz v. PNC Bank, N.A.</u>, No. 06-1075, 2008 WL 1994858, at *4 n.19 (W.D. Pa. May 5, 2008)

---

10.  The decision to permit these non-admitted attorneys to recover the remaining eighty-five percent (85%) of their fees as determined by the lodestar calculation should not be construed to mean that in any case and in all circumstances, non-admitted attorneys will recover such a large portion of their fees.  These particular attorneys are now on notice of their obligation to abide by the local rules governing attorney admission.  Any future violation of the local rules will likely be willful rather than inadvertent or otherwise excusable.  Furthermore, the percentage awarded in this case shall not be construed as precedent with regard to future fee applications before this Court made by other attorneys who are not in compliance with the local rules.  At all times, the Court retains its discretion to fashion an appropriate award in future matters depending on the facts and circumstances of each case.

11.  Local Civil Rule 101.1(c)(3) provides that "[t]he order of the Court granting a motion to appear pro hac vice shall require the out-of-state attorney to make a payment of $150.00 on each admission payable to the Clerk, USDC."  L. Civ. R. 101.1(c)(3).

(excluding from fee award hours bill by law firm in part because "no counsel from that firm was admitted *pro hac vice* to this district").

     **D.   Reasonable Hourly Rates**

     With respect to the hourly rates sought for Attorneys Kurtz, Barker, and Corzano ($350.00 and $210.00, respectively), Plaintiff contends that these rates "are commensurate with the experience and training of each employee at Krohn & Moss, Ltd." (Pl.'s Mot. 9.)  Plaintiff offers the following in support of the reasonableness of these hourly rates: (1) attorney biographies; (2) the 2010 Consumer Law Attorney Fee Survey; (2) the 2004 National Law Journal Survey;[12] (3) the Laffey Matrix; and (4) the affidavit of Steven Solomon, Esquire, a consumer protection attorney licensed to practice in California, not New Jersey. (Id. at 9-13; see also Exs. D, F-H [Doc. Nos. 10-4, 10-6, 10-7, 10-8].)

     Defendant argues that the attorney biographies are inadequate to support the rates requested, and further contends that Plaintiff's other supporting materials have all been repeatedly rejected by courts in this District and by the Third Circuit.  (Def.'s Opp'n 7-9.)  As an alternative, Defendant urges the Court to adopt the 2006 fee schedule established by Community

---

12.  Although Plaintiff represents in the motion that the National Law Journal Survey is from 2007, the exhibit attached to the motion appears to be from 2004.

Legal Services of Philadelphia ("the CLS fee schedule") which has
been accepted by the Third Circuit and other courts in this
District to calculate the prevailing market rates in this region.
(Id. at 9-10.)  Plaintiff objects to the application of the CLS
fee schedule because the fee schedule from 2006 is outdated and
"applies only to the community of Philadelphia and not to the
community of New Jersey."  (Pl.'s Reply Br. 6.)

     The relevant inquiry in evaluating the reasonableness of
attorneys' hourly rates is the prevailing rate for comparable
legal services in the forum of litigation.  See Interfaith Cmty.
Org., 426 F.3d at 705.  Plaintiff bears the burden "of producing
sufficient evidence of what constitutes a reasonable market rate
for the essential character and complexity of the legal services
rendered in order to make out a prima facie case."  Smith v.
Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997).  In
arguing that the requested rates of $350.00 and $210.00 per hour
are reasonable, Plaintiff relies entirely on his supporting
materials alone, and fails to cite a single case within this
District or this Circuit where any of those materials were
accepted as indicative of the prevailing market rate in the
District of New Jersey.  Plaintiff has not satisfied his burden
on this issue simply by presenting the Court with the 2010
Consumer Law Attorney Fee Survey, the 2004 National Law Journal
Survey, the Laffey Matrix, and the affidavit of Steven Solomon,

Esquire, an out-of-state attorney who does not practice in New Jersey.

A simple search reveals that courts in this District have repeatedly reject these same materials in determining the reasonableness of hourly rates when fashioning FDCPA fee awards. See, e.g., Freid v. Nat'l Action Fin. Servs., Inc., No. 10-2870, 2011 WL 6934845, at *6-7 (D.N.J. Dec. 29, 2011) (refusing to consider the 2007 Consumer Law Survey, the Laffey Matrix, an affidavit from a non-New Jersey consumer protection attorney, or the National Law Journal Survey to assess reasonable rates in New Jersey for purposes of FDCPA fee award); Cassagne v. Law Offices of Weltman, Weinberg and Reis Co., No. 11-2791, 2011 WL 5878379, at *5 (D.N.J. Nov. 23, 2011) (reaching the same conclusion regarding the Consumer Law Survey, the Laffey Matrix, and affidavits of non-New Jersey licensed attorneys); Levy, 2011 WL 5117855, at *3-4 (declining to adopt the Consumer Law Attorney Fee Survey, the Laffey Matrix, and the affidavit of a consumer protection attorney who was not admitted in New Jersey and did not represent clients in New Jersey, in ruling on fee petition under FDCPA); Weed-Schertzer, 2011 WL 4436553, at *4 (same); see also Conklin v. Pressler and Pressler LLP, No. 10-3566, 2012 WL 569384, at *4-5 (reducing attorneys' hourly rates in fee petition under FDCPA despite plaintiff's presentation of nearly identical sources in support of requested rates).

This Court similarly declines to consider Plaintiff's supporting materials as indicative of the prevailing market rate in this District for the same reasons previously articulated by other courts in this District.  The Court agrees with Defendant and the court in Levy that the CLS fee schedule has been cited with approval by the Third Circuit and includes hourly rates "comparable to the fee schedules used to calculate attorneys' fees in other FDCPA cases in this district."  2011 WL 5117855, at *4.  However, Plaintiff's point that the 2006 CLS fee schedule is outdated is well taken.  Accordingly, the Court will employ the most recent CLS fee schedule effective June 23, 2011.  CLS Fee Schedule, http://www.clsphila.org/Content.aspx?id=206 (last visited June 22, 2012).  The 2011 CLS fee schedule establishes the following rates relevant on this motion: for attorneys with 2-5 years experience – an hourly rate between $180.00 and $225.00; for attorneys with 6-10 years experience – an hourly rate between $225.00 and $255.00; for paralegals – an hourly rate from $80.00 to $100.00; and for senior and supervisory paralegals – an hourly rate from $100.00 to $135.00.  Id.

Here, Plaintiff represents that Ms. Kurtz has been licensed in New Jersey for over seven years, that Mr. Barker has been licensed in Indiana and Illinois for over ten years, and that Mr. Corzano has been licensed in California for over three years. (Pl.'s Reply Br. 5.)  Therefore the Court finds the following

36

hourly rates reasonable for these attorneys: Ms. Kurtz – $235.00 per hour; Mr. Barker - $255.00 per hour; and Mr. Corzano – $190.00 per hour.

Plaintiff also seeks to recover time incurred by Moira Roth at a rate of $125.00 per hour.  The billing records identify Ms. Roth as a "legal assistant".  (Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3] 4.)  However, the time Ms. Roth billed is categorized as "paralegal" time on Plaintiff's summary chart of fees and costs.  (Id. at 1.)  As Defendant accurately points out, Plaintiff does not provide sufficient information regarding Ms. Roth's training, skill, or level of experience.  Plaintiff does argue though that Ms. Roth is more than just "an untrained secretary[.]"  (Pl.'s Reply Br. 8.)  In these circumstances, the Court cannot assume without adequate factual support that Ms. Roth would qualify as a senior or supervisory paralegal under the CLS fee schedule.  Moreover, the Court finds insufficient support for the reasonableness of Ms. Roth's proposed $125.00 per hour rate.  Therefore, the Court finds that a reasonable hourly rate for Ms. Roth is $80.00 per hour.

    E.    **Reasonable Hours Expended**

In fashioning an award of attorneys' fees, the "prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case[.]"  Interfaith Cmty. Org., 426 F.3d at 711.  "Hours that would not generally be

billed to one's own client are not properly billed to an adversary." Pub. Interest Research Group, 51 F.3d at 1188.  As a result, the Court must determine "whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." Interfaith Cmty. Org., 426 F.3d at 711 (internal quotations and citation omitted).  In conducting a "thorough and searching analysis" of such charges, the Court cannot reduce an award *sua sponte* but "only in response to specific objections made by the opposing party." Id.

Here, Defendant objects to 1.2 hours of timed billed by a paralegal, Moira Roth, on the basis that all of the work performed by Ms. Roth consisted of "purely administrative tasks which are simply not recoverable and must be excluded here." (Def.'s Opp'n 13.)  Defendant objects to five specific time entries for Ms. Roth:

> (1)  June 28, 2011 - "Received documents from client (.1)";
> (2)  August 18, 2011 - "Served complaint by process server (.5)";
> (3)  August 26, 2011 - "Received email from process server stating that due to hurricane everything is down for business until Monday (.1); Noted to file (.1)";
> (4)  September 8, 2011 - "Called process server regarding status of service and stated that it was filed (.2)";
> (5)  September 8, 2011 - "Emailed Defendant attorney contact information (.2)".

(Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3] 4;

see also Def.'s Opp'n 12-13.)

"As a general rule, time that would not be billed to a client cannot be imposed on an adversary.... Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." Levy, 2011 WL 5117855, at *6.  Administrative tasks generally include, but are not limited to, opening a file in a database, entering case updates in a management system, mailing letters, copying documents, calendaring deadlines, confirming contact information, and talking with a process server or court clerk.  See, e.g., Levy, 2011 WL 5117855, at *6; Brass, 2011 WL 3862145, at *5. Here, the Court will exclude all of the challenged entries except for .5 hours incurred on August 18, 2011 for serving the complaint by process server.  The four other entries – totaling .7 hours of time - clearly represent the performance of administrative tasks like receiving client documents, receiving email updates from a process server, speaking with a process server to confirm the status of service, and emailing contact information, and therefore are excluded.  Although the August 18, 2011 time entry for serving the complaint via a process server appears on its face to be more than a purely administrative task, the absence of specific details on how Ms. Roth "served the complaint by a process server" and what that entails warrants an additional reduction of .1 hours.  Therefore, the Court will only

award fees for a total of .4 hours of Ms. Roth's time.

To the extent that Defendant objects to the award of any fees to Ms. Kurtz, Mr. Barker, and Mr. Corzano on several grounds as detailed above, the Court construes these objections broadly and similarly finds that the following time entries for these attorneys must be excluded as administrative in nature:

> (1) May 12, 2011 – Mr. Barker: "Open file in database (.2)";
> (2) May 12, 2011 - Mr. Barker: "Prepared Amicus Precedent to track case (.1)";
> (3) July 13, 2011 - Mr. Corzano: "Reviewed case to see if Defendant responded to pre-suit demand (.1)";
> (4) July 25, 2011 - Mr. Corzano: "Reviewed case to see if Defendant responded to pre-suit demand (.1)";
> (5) September 8, 2011 - Ms. Kurtz: "Received email from Defendant's counsel requesting an extension to answer and demand (.1)"; and
> (6) September 9, 2011 - Mr. Corzano: "Reviewed case and instructions from Jennifer (.1)".

(Attorney Billing Records, Ex. C to Pl.'s Mot. [Doc. No. 10-3] 4-5.)

Plaintiff originally sought fees for 5.7 hours of time billed by Mr. Barker.  The Court will reduce this number by 2.1 hours for time billed after the date of the Offer of Judgment as set forth <u>supra</u>, and by .3 hours billed for administrative tasks.  Therefore, Plaintiff can recover fees for 3.3 hours of time billed by Mr. Barker.  With respect to Mr. Corzano, Plaintiff originally sought fees for 5.9 hours of time.  The Court will reduce this number by 2.6 hours for time billed after the date of

the Offer of Judgment as set forth _supra_, and by .3 hours billed for administrative tasks.  Accordingly, Plaintiff can recover fees for 3.0 hours of time billed by Mr. Corzano.  Similarly, Plaintiff initially sought fees for 2.5 hours of time billed by Ms. Kurtz.  The Court will reduce this number by .9 hours for time billed after the date of the Offer of Judgment, and by .1 hours billed for an administrative task.  Thus, Plaintiff can recover fees for 1.5 hours of time billed by Ms. Kurtz.

   **F.   Lodestar Calculation**

   For the reasons set forth above, the lodestar in this case is as follows:

| Legal Professional | Reasonable Hourly Rate | Reasonable Hours Expended | Subtotal of Recoverable Fees |
|---|---|---|---|
| Jennifer Kurtz, Esquire | $235.00 | 1.5 | $352.50 |
| John Barker, Esquire | $255.00 | 3.3 | $841.50 |
| Mahadhi Corzano, Esquire | $190.00 | 3.0 | $570.00 |
| Moira Roth, Paralegal/Legal Assistant | $80.00 | 0.4 | $32.00 |

   Having now employed the lodestar calculation, the Court will reduce the subtotal of the recoverable fees for Mr. Barker and Mr. Corzano by fifteen percent (15%) each and then again by another $150.00 for each attorney for their failure to properly seek _pro hac vice_ admission in this case.  Thus, Plaintiff can recover reduced fees for Mr. Barker in the total amount of $565.28 and for Mr. Corzano in the total amount of $334.50.  In

conclusion, Plaintiff is entitled to recover the following attorneys' fees and costs in this action: $352.50 regarding Ms. Kurtz, $565.28 regarding Mr. Barker, $334.50 regarding Mr. Corzano, $32.00 regarding Ms. Roth, and $410.00 in litigation costs for a total award in the amount of **$1,694.28.**

**V.   CONCLUSION**

Accordingly, the Court grants Plaintiff's motion [Doc. No. 10] for attorneys' fees and costs in part but reduces the total award as set forth herein.   Defendant shall reimburse Plaintiff's counsel $1,694.28.   An Order consistent with this Opinion will be entered.


Dated: June 25, 2012                    /s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

42